IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRIE WHITE,<br><br>   Plaintiff,<br><br> v.<br><br>GMRI, INC. dba OLIVE GARDEN #1359; and DOES 1 through 10,<br><br>   Defendant. | CIV-S-04-0465 DFL CMK<br><br>MEMORANDUM OF OPINION AND ORDER |

   Plaintiff Sherrie White ("White") moves for attorneys' fees and costs in the amount of $25,196.29 following the settlement of her ADA accessibility lawsuit against defendant GMRI, Inc. ("GMRI"). GMRI challenges White's request for fees and costs on several grounds. For the following reasons, the court awards $8,048.62 in attorneys' fees and costs.

                I.

   White, a quadriplegic, filed this ADA accessibility lawsuit on March 8, 2003, claiming that she experienced numerous access barriers during her visit(s) to GMRI's Olive Garden restaurant. (Mot. at 2.) Soon thereafter, GMRI communicated its willingness

to cooperate in resolving the suit. (Orlick Decl. ¶ 6.) In November 2004, White's attorney, Mr. Hubbard, provided GMRI with an expert accessibility report. (Id. ¶ 7.) The report identified 55 alleged access violations, many of which had not been previously identified by White. (Opp'n at 11.) Furthermore, White did not have standing to raise approximately 21 of the alleged violations, such as issues related to the men's restroom or visually impaired persons. (Id. at 8.) Following receipt of the expert report, GMRI reiterated its desire to cooperate and resolve the lawsuit. Specifically, GMRI agreed to make all changes identified in the expert report, except those for which White lacked standing to bring and the allegations related to the public sidewalk. (Orlick Decl. Ex. H.)

GMRI contends that, after several months of negotiations, the parties reached a settlement agreement on all issues save for attorneys' fees. (Id. ¶ 7.) GMRI asserts that Mr. Hubbard confirmed the existence of this agreement in a voice-mail on March 30, 2005. (Id.) Mr. Hubbard apparently perceived the situation differently. In May 2005, he filed a final pretrial statement in which he continued to seek injunctive relief and statutory damages for various alleged access violations, despite GMRI's protestations that the parties had already resolved all such issues and that the case was settled. (Id. Ex. E.)

However, only a few minutes into the pretrial conference, White agreed to settle the case. Mr. Hubbard conceded that White lacked standing to bring approximately 1/3 of the identified

claims and abandoned those issues. (Id. ¶ 4.) He also abandoned White's claims regarding the public sidewalks, conceding that the City of Redding was responsible for them. (Id. ¶ 5.) In the settlement agreement, White released her equitable claims in exchange for $4,000 in monetary damages and GMRI's promise to remove or remedy the remaining architectural barriers. (Mot. at 2.) The resolution of attorneys' fees was left for this motion. (Id.)

## II.

The ADA provides that a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. A prevailing party under this statute "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002), quoting Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1999 (1983). A plaintiff who enters into a legally enforceable settlement agreement is considered a prevailing party. Id.

The calculation of an appropriate fee award involves a two-step process. Fischer v. SJB P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court must calculate the 'lodestar figure' by taking the numbers of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Id. Certain factors should be taken into consideration when

calculating the appropriate lodestar figure.[1]  "Second, a court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation."[2]  Van Gerwen v. Guar. Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases."  Id. (internal citations omitted).

   White requests $25,196.29 in attorneys' fees and litigation expenses.  (Hubbard Decl. ¶ 5.)  This amount includes $18,196.25 in attorney, paralegal, and legal assistant fees for 91.75 billed hours and $7,004.04 in litigation expenses.  (Id. ¶¶ 5-6.)  The bulk of the requested litigation expenses consists of $5,463.75 in expert fees.  (Id. ¶ 23.)  While conceding that White is a prevailing party, GMRI challenges the rates and hours requested on several grounds.[3]  (Opp'n at 7-9.)  Additionally, GMRI argues

---

[1] The factors subsumed into the lodestar analysis include: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement. Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).

[2] These factors include: (1) the time and labor required; (2) the skill requisite to perform the legal services properly; (3) the preclusion of other employment by the attorney due to acceptance of the case; (4) the customary fee; (5) time limitations imposed by the client or the circumstances; (6) the undesirability of the case; (7) the nature and length of the professional relationship with the client; and (8) awards in similar cases. Morales, 96 F.3d at 364 n.8.

[3] GMRI also argues that White should not be awarded any attorneys' fees and costs because she failed to provide a pre-litigation warning notice and a reasonable opportunity to cure

4

that White's request for expert witness fees should be denied as insufficiently documented.[4]  (Id. at 14-15.)

A.  Reasonable Rate

Mr. Hubbard requests the following rates for the hours billed: $250 per hour for his time, $175 per hour for his associate, $75 per hour for his paralegals, and $65 per hour for his legal assistants.  (Hubbard Decl. ¶ 6.)  His requested rates for himself and his associate are consistent with what courts in this District routinely award to Mr. Hubbard in similar cases.

---

the violations.  (Opp'n at 2-7.)  GMRI bases its argument almost entirely on a recently decided case from the Central District of California, Doran v. Del Taco, Inc., __ F.Supp.2d __, 2005 WL 1389270 (C.D.Cal. June 9, 2005), in which Judge Taylor held that no attorneys' fees should be recoverable under the ADA in the absence of a pre-litigation notice.  While the court finds some of Doran's reasoning persuasive on policy grounds, it does not agree that the lack of pre-filing notice is an automatic bar to all attorneys' fees.  The statute does not impose such a requirement, nor is such notice a typical prerequisite to attorney's fee awards in civil rights cases.

[4] GMRI has submitted evidentiary objections to Mr. Hubbard's declaration in support of the motion for attorneys' fees.  Several of these objections are to statements in Mr. Hubbard's declaration that the court does not rely upon.  Therefore, the court need not address these objections.  (Evidentiary Objections ¶¶ 3,4,6,7.) GMRI's other objections are to the itemization and documentation of attorney and paralegal time submitted by Mr. Hubbard.  These time summaries were contemporaneously prepared by Mr. Hubbard's law office, and Mr. Hubbard states that he has personal knowledge of the hours he and his staff members worked on the case.  (Hubbard Decl. ¶ 7.)  The court finds these documents to be properly submitted in support of White's fee request.  See Fischer, 214 F.3d at 1121 (noting that contemporaneous time records are the preferred form of evidentiary support for attorneys' fees requests but that even fee requests based upon reconstructed files are sufficient). Accordingly, GMRI's evidentiary objections to this documentation on the grounds of hearsay, lack of authentication, best evidence, and lack of personal knowledge are denied.

1  E.g., Hooper v. Calny, CIV-S-03-0167 (April 25, 2005 E.D. Cal.).
2  The court finds these rates to be reasonable.
3      GMRI challenges White's entitlement to separate fees for Mr.
4  Hubbard's paralegals and legal assistants. (Opp'n at 13.) GMRI
5  contends that these hours are overhead expenses that should be
6  subsumed within Mr. Hubbard's billing rates. (Id.) With regard
7  to the paralegals, federal courts have consistently held that
8  time spent by paralegals is compensable at market rates
9  separately from attorney services if the local practice is to
10 bill for their services in that manner. E.g., Missouri v.
11 Jenkins, 491 U.S. 274, 285-87, 109 S.Ct. 2463 (1989); United
12 Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403,
13 407-08 (9th Cir. 1990). Mr. Hubbard states that the local
14 practice is to bill separately for paralegal time. (Reply at 13-
15 14.) Accordingly, these hours are compensable, and the court
16 finds that the requested $75 an hour rate is reasonable. E.g.,
17 Hooper v. Calny, CIV-S-03-0167 (April 25, 2005 E.D. Cal.)
18 (finding this rate to be reasonable for Mr. Hubbard's
19 paralegals).
20     However, the court declines to grant any fees for the legal
21 assistants because White has failed to provide any basis to
22 determine a reasonable fee for such services. The prevailing
23 party bears the burden of producing satisfactory evidence of the
24 appropriate market rate. Blum v. Stenson, 465 U.S. 886, 895
25 n.11, 104 S.Ct. 1541 (1984). Here, Mr. Hubbard requests a rate
26 for his legal assistants that is essentially equivalent to the

reasonable paralegal rate. This rate is not reasonable, and White has provided the court with no other information from which a reasonable rate can be determined. Accordingly, the court declines to award fees for Mr. Hubbard's legal assistants.

B.  Reasonable Hours

GMRI challenges the appropriateness of White's requested hours, asserting that many of them are unnecessary, excessive, fraudulent, and/or redundant. (Opp'n at 10.) First, GMRI contends that the 17 hours Mr. Hubbard billed for the final pretrial conference were unnecessary because of GMRI's detailed settlement offer made prior to the pretrial conference.[5] (Id.) In fact, it was GMRI's understanding that the parties had reached a settlement agreement that would have resolved the entire case. (Id.)

The court agrees that these hours were unnecessary. In spite of GMRI's detailed offer, Mr. Hubbard persisted in demanding remediation of all of the alleged violations, only to concede within the first ten minutes of the pretrial conference that White lacked standing to raise approximately 1/3 of the alleged violations. (Id.) The speed with which Mr. Hubbard agreed to settle the case and conceded these claims suggests that the conference, and the 17 hours of preparation for the

---

[5] GMRI also argues that 3.80 hours Mr. Hubbard billed for drafting four sets of discovery requests were unnecessary given that GMRI had already agreed to make its facility fully accessible to disabled patrons. (Id.) The court need not reach this issue because, as discussed below, it denies fees for these hours on a different ground.

7

conference, were not necessary.  Accordingly, the court denies fees for these 17 hours.

Second, GMRI argues that several of Mr. Hubbard's requested hours are excessive.  (Id. at 12.)  For instance, GMRI takes issue with several of Mr. Hubbard's entries for the preparation of boilerplate letters and forms that he has used in other cases.  (Id.)  Specifically, GMRI argues that it is inappropriate to bill .80 hours and 3.80 hours, respectively, for the preparation of a settlement demand letter and discovery requests identical to those used in earlier cases.  (Id.)  Additionally, GMRI argues that Mr. Hubbard's use of eleven different timekeepers on this lawsuit is excessive.  (Id.)

The court agrees with GMRI concerning the hours billed for the preparation of the boilerplate documents.  The preparation of such documents is a mere secretarial task for which no fees shall be awarded.  However, the court declines to reduce White's requested hours based on the number of staff members used on the case.  For one, it is the overall number of hours billed that is critical, not how many individuals performed the work.  Furthermore, the court has already declined to compensate White for Mr. Hubbard's legal assistants, thereby also addressing GMRI's concern about over-staffing.

Third, GMRI challenges the veracity of the following hours requested by White: (1) 2.6 hours requested by Mr. Hubbard for settlement discussions with White because White admitted in her deposition that she does not discuss settlements with Mr.

8

Hubbard; (2) 1 hour requested by Mr. Hubbard for the preparation of a written fee agreement because White does not recall having a fee agreement with Mr. Hubbard; (3) the duplicate entries of .30 hours on July 16, 2004 for composition of the same letter; (4) 1.2 hours requested by Scott Hubbard for a telephone conversation with defense counsel on June 8, 2005 because, according to defense counsel, the conversation only lasted 15 minutes; and (5) 6 hours requested by Mr. Hubbard for the site inspection of the restaurant because, according to defense counsel, the inspection lasted only one hour. (Orlick Decl. ¶ 8.)  In total, these arguments challenge 9.85 hours.

Mr. Hubbard provides no response to these challenged hours. Accordingly, White fails to meet her burden of establishing the reasonableness of these hours.  The court, therefore, denies fees for these 9.85 hours.

In sum, the court strikes 31.45 of White's requested hours as unnecessary, excessive, or insufficiently supported.  In addition, for the reasons described above, the court also denies fees for the 14.50 hours Mr. Hubbard's legal assistants spent on the case.  White is entitled to fees for the remaining 45.80 hours.[6]

C.  Reduction of the Lodestar Figure

---

[6] GMRI also asserts that White requested 6.8 hours for Scott Hubbard's work on the case when the records show that he only worked 2.8 hours. (Orlick Decl. ¶ 8(d)(12).) GMRI is mistaken. White only requests 2.8 hours for Scott Hubbard's time. (Hubbard Decl. ¶ 6.)

9

GMRI argues that several factors counsel in favor of reducing White's lodestar figure. First, GMRI argues that the court should reduce any fee award because of the nature of Mr. Hubbard's litigation practice. (Opp'n at 9.) Specifically, GMRI contends that: (1) this case does not raise novel or complex questions of law, given that given that Mr. Hubbard has filed nearly 500 ADA accessibility lawsuits, all involving similar issues; (2) this is not an "undesirable case," given that prosecuting such cases involves little work and often results in a quick settlement and the right to lucrative attorneys' fees; (3) there is little time and labor required for prosecuting such cases because Mr. Hubbard reuses pleadings, form letters, and even settlement demands; and (4) Mr. Hubbard and White have a longstanding professional relationship which provides Mr. Hubbard significant benefits. (Id.)

The court declines to reduce the lodestar amount based on these factors. GMRI's arguments amount, in essence, to a general criticism of Mr. Hubbard's legal practice. These criticisms are insufficient to make this one of the "rare and exceptional" cases in which a downward departure from the lodestar figure is appropriate. Van Gerwen, 214 F.3d at 1045.

Second, GMRI argues that the lodestar figure should be reduced to account for White's limited success. (Opp'n at 7-8.) GMRI contends that White achieved only limited success because she conceded at the pretrial conference that: (1) she lacked standing to bring approximately 1/3 of the identified claims; and

10

(2) GMRI was not responsible for fixing alleged violations in the public sidewalk. (Id. at 8.) Accordingly, the settlement agreement provided her approximately 2/3 of the relief sought. (Id.) In response, White argues her fee award should not be reduced because the work on her successful and unsuccessful claims was inextricably intertwined. (Reply at 11.)

One of the factors courts must consider in determining the lodestar figure is the "results obtained" in the litigation, especially where a plaintiff did not succeed on some of her claims. Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995). In such cases, courts must follow a two-part analysis in determining whether to reduce an attorneys' fee award:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

Id. at 901-02. In determining whether the unsuccessful and successful claims are related,

> the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised. Thus, the focus is to be

11

```
        on whether the unsuccessful and successful claims
        arose out of the same course of conduct.
```

Id. at 903, quoting <u>Thorne v. City of El Segundo</u>, 802 F.2d 1131, 1141 (9th Cir. 1986).  If a court finds the unsuccessful claims to be unrelated to the successful claims, it may either attempt to identify specific hours that should be eliminated or simply reduce the award to account for the limited success.  Id. at 904.

   Applying the above analysis to the present case, the court finds it appropriate to reduce the lodestar figure based on White's limited success.  Each of White's alleged violations represent different and unrelated claims.  The alleged violations are premised on different facts and require the application of different sections of the ADA Accessibility Guidelines to determine liability.  Claims related to the sidewalk, for example, have nothing in common with claims related to the bathroom.  Moreover, the inclusion of claims for which plaintiff has no standing or for which defendant has no responsibility needlessly complicate the litigation and inflict unnecessary costs on defendant.  Such over-charging should be discouraged.  Because Mr. Hubbard's time entries cannot be easily divided between the successful and unsuccessful claims, the court reduces White's fee award by 1/3 to account for her limited success.

D.   Expert Witness Fees

   Finally, GMRI challenges White's request for $5,465.75 in expert witness fees.  (Opp'n at 14.)  GMRI contends that the one-line, lump sum invoice Mr. Hubbard provides the court lacks

sufficient information from which to determine whether the cost is reasonable. (Id. at 14.)  The court agrees.  The expert's invoice does not list the hourly rate charged or the hours worked; rather, it only states that the fee charged was for the expert's performance of a site inspection and the preparation of an expert report.  (Hubbard Decl. Ex. C.)  The lack of such basic information makes it impossible to determine whether the amount requested is reasonable.

White contends that the invoice, though simple, is sufficient because she provided GMRI a copy of her expert report and an opportunity to depose her expert.  (Reply at 14.) Accordingly, she argues, GMRI had sufficient opportunity to discover who was involved in the preparation of the expert report, his fee, and the amount of time it took.  (Id.)  However, it is White's responsibility, not GMRI's, to document the fees and costs she is requesting as part of an attorneys' fee award, and her documentation must be sufficiently specific for the court to conclude that the amount requested is reasonable.   Hensely, 461 U.S. at 434-34.  Her documentation lacks this requisite specificity.  Accordingly, the court denies White her requested expert witness fees.

### III.

Based on the forgoing discussion, White is awarded $6,501.85 for attorneys' fees, calculated as follows:

| Attorneys/Assistants | Hours | Rate | Total |
|---|---|---|---|
| Lynn Hubbard (attorney) | 35.10 | $250 | $8,775 |

13

| | | | |
|---|---|---|---|
| Scott Hubbard (associate) | 1.85 | $175 | $323.75 |
| Paralegals | 8.85 | $75 | $663.75 |
| **Sub-Total:** | 45.80 | | $9,762.50 |
| Negative Multiplier (1/3): | | | $6,508.33 |

Additionally, the court awards White her requested litigation costs minus the requested expert witness fees, totaling $1,540.29. In sum, the court awards White $8,048.62 in attorneys' fees and costs.

   IT IS SO ORDERED.

Dated: 8/19/2005

_____
DAVID F. LEVI
United States District Judge